UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HANNAH LEVECQUE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:14-cv-00218-JAW |
| | ) | |
| ARGO MARKETING GROUP, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND TO FACILITATE COURT-APPROVED NOTICE

In this Fair Labor Standards Act (FLSA), Maine Employment Practices Act, and Maine Minimum Wage and Overtime Law claim, the Plaintiffs, current and former employees of Argo Marketing Group, Inc. (Argo), assert claims against Argo, against Argo's owner and chief executive officer, Jason Levesque, and against Argo's chief operations officer, Daniel Molloy. Plaintiffs ask the Court to conditionally certify as a collective action their FLSA claim for unpaid wages and overtime and to facilitate court-approved notice to all other similarly situated employees. The Court grants their motion. As certification is conditional, the Defendants may move the Court to decertify the collective action at the close of discovery.

## I.   BACKGROUND

### A.   Procedural History

On May 27, 2014, Hannah LeVecque, Beth Dazet, Nicholas Passafiume, Celeste Wing, and Matthew Violette filed a complaint against Argo Marketing Group, Inc., Jason Levesque, and Daniel Molloy. *Class and Collective Action Compl.* (ECF No. 1). On July 28, 2014, Argo filed an answer and counterclaim. *Answer and Countercl. of Def. Argo Mktg. Grp., Inc.* (ECF No. 11). On July 30, 2014, Argo filed an amended answer. *Am. Answer of Def. Argo Mktg. Grp., Inc.* (ECF No. 16). On August 18, 2014, the Plaintiffs filed an amended complaint. *First Am. Class and Collective Action Compl. and Demand for Jury Trial* (ECF No. 17) (*First Am. Compl.*). On September 2, 2014, Argo filed an answer to the First Amended Complaint. *Answer of Def. Argo Mktg. Grp., Inc. to First Am. Compl.* (ECF No. 21).

On November 18, 2014, Matthew Violette and Wayne C. Smith consented to join a collective action lawsuit regarding claims under the FLSA, pursuant to 29 U.S.C. § 216(b). *Consent to Join Fed. Wage and Hour Lawsuit Pursuant to [29] U.S.C. § 216(b)* (ECF No. 31) (*Violette Consent*); *Consent to Join Fed. Wage and Hour Lawsuit Pursuant to [29] U.S.C. § 216(b)* (ECF No. 32) (*Smith Consent*). One month later, on December 18, 2014, Plaintiffs filed a motion for conditional certification of their FLSA collective action and to facilitate court-approved notice. *Pls.' Mot. for Conditional Certification of FLSA Collective Action and to Facilitate Ct.-Approved Notice* (ECF No. 33) (*Pls.' Mot.*). The Defendants responded in opposition on January 8, 2015. *Defs.' Resp. to Pls.' Mot. for Conditional Certification of FLSA Collective Action and to Facilitate Ct.-Approved Notice* (ECF No. 34) (*Defs.' Opp'n*). Plaintiffs replied to the Defendants' opposition on January 22, 2015. *Pl[s.'] Reply to Defs.' Opp'n to Pls.' Mot.*

*for Conditional Certification of FLSA Collective Action* (ECF No. 37) (*Pls.' Reply*). Finally, on April 6, 2015, Lorraine D. Larrabee consented to join a collective action lawsuit under the FLSA, as did Hector L. Mendoza on April 7, 2015, Denise Moody on April 22, 2015, Laurie M. Anderson on June 2, 2015, and Alicia Jenkins on June 3, 2015. *Consent to Join Fed. Wage and Hour Lawsuit Pursuant to [29] U.S.C. § 216(b)* (ECF No. 45) (*Larrabee Consent*); *Consent to Join Fed. Wage and Hour Lawsuit Pursuant to [29] U.S.C. § 216(b)* (ECF No. 46) (*Mendoza Consent*); *Consent to Join Fed. Wage and Hour Lawsuit Pursuant to [29] U.S.C. § 216(b)* (ECF No. 49) (*Moody Consent*); *Consent to Join Fed. Wage and Hour Lawsuit Pursuant to [29] U.S.C. § 216(b)* (ECF No. 51) (*Anderson Consent*); *Consent to Join Fed. Wage and Hour Lawsuit Pursuant to [29] U.S.C. § 216(b)* (ECF No. 52) (*Jenkins Consent*).

### B.    Count I of Plaintiffs' First Amended Complaint[1]

Plaintiffs allege that the Defendants failed to pay them and the collective class overtime wages in accordance with the FLSA. *First Am. Compl.* ¶ 105. Specifically, they say they were not paid for the "period between logging into Shift Planner and download of information from VACD or Atmosphere software, the two 10-minute rest breaks, and bathroom breaks." *Id.* ¶ 73. They also state they are "similarly situated" within the meaning of the FLSA because they: (1) all work or worked for Argo as customer service representatives and/or as salesmen; (2) all worked at Argo call centers in Maine; (3) were not paid for their time as alleged in paragraph 73 of their First Amended Complaint; (4) all worked in excess of 40 hours per week when time

---

[1]     Plaintiffs presented ten causes of action in their First Amended Complaint, but Plaintiffs are only seeking conditional certification of their claims relating to Count I. *Pls.' Reply* at 1 n.1.

from paragraph 73 is included as "hours worked"; and (5) were all denied overtime pay by Argo. *Id.* ¶ 75.

Plaintiffs contend that Defendants' actions "have been willful and intentional. Defendants have not made a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and the FLSA collective." *Id.* ¶ 106. They seek "unpaid overtime wages for the three years directly preceding the date this Complaint is filed and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest," in accordance with 29 U.S.C. § 216(b). *Id.* ¶ 107.

They also assert that the "Defendants employ call center employees to sell and service various products offered by third party vendors such as weight loss, energy, and sexual enhancement products." *Id.* ¶ 25. Argo is a Maine corporation with its principal office in Lewiston. *Id.* ¶ 12. Jason Levesque is the Chief Executive Officer and sole owner of Argo. *Id.* ¶ 14. Daniel Molloy is the Chief Operating Officer of Argo. *Id.* Together, they "direct the day-to-day operations of Argo, including wage and disciplinary policies." *Id.*

## II.   THE PARTIES' POSITIONS

### A.   Plaintiffs' Motion

Plaintiffs assert that unlike a typical class action under Rule 23, where the filing of the complaint tolls the statute of limitations, there is a two-year statute of limitations period under the FLSA (or three years if the action by Defendants is willful) and, therefore, it is imperative that notice be mailed to potential class

members as soon as possible to allow them the opportunity to opt-in. *Pls.' Mot.* at 1-2 (citing 29 U.S.C. §§ 255(a), 256). They ask that the Court enter the following order:

(1) defining part of this action on a conditional basis as a collective action under 29 U.S.C. § 216(b) on behalf of a class of individuals (the "FLSA Class") defined as: "All persons who are employed or have been employed by Defendant Argo as customer service representatives and/or sales persons based in the State of Maine at any time since three years prior to the filing of the Complaint";

(2) appointing the five named Plaintiffs as class representatives;

(3) appointing Johnson, Webbert & Young, LLP as lead class counsel;

(4) directing Defendants to produce to Plaintiffs in electronic form the following information for each current and former customer service representative and sales person in the FLSA Class: the individual's name, address, alternate address (if any), email address, telephone number and alternate telephone numbers (if any), in Defendants' possession, within 14 days of the Court's decision;

(5) approving the proposed notice and consent form, attached hereto as Exhibit 1, authorizing Plaintiffs and their counsel to send it to all FLSA Class members and to post the forms online, with links and identifying information, immediately upon receipt of the Court's decision;

(6) requiring Defendants to post the proposed notice and consent form within seven days of the Court's decision at Defendants' call and service centers in Portland, Auburn,[2] and Pittsfield, Maine (and in any other location in Maine where Defendants operate a call or service center) in a conspicuous place frequented by the customer service representatives and sales persons;

(7) requiring Defendants to send, within seven days of the Court's decision, the proposed notice and consent form electronically (via email or other similar internal means) to all current customer service representatives and sales persons; and

---

[2] The Court assumes that the Auburn location is synonymous with the Lewiston location referred to in the affidavits.

5

(8) requiring Defendants to refrain from engaging in communications or activities that may improperly influence, mislead or discourage putative plaintiffs from joining this action.

*Id.* at 2-4.

Plaintiffs begin by summarizing their attached affidavits.[3]  *Id.* at 4-7.  They then direct the Court's attention to Judge Hornby's decision in *Prescott v. Prudential Insurance Co.*, 729 F. Supp. 2d 357 (D. Me. 2010), where he discussed and applied the so-called "two stage" approach for certification of class actions.  *Pls.' Mot.* at 8.  As to the first stage, which addresses whether notice should be sent to potential members, Plaintiffs assert that their burden is low, and they must only present "'a modest factual showing that she and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan.'"  *Id.* (quoting *Prescott*, 729 F. Supp. 2d at 364).  In addition, Plaintiffs observe that "'under this fairly lenient standard, the initial stage analysis typically results in conditional certification of a collective action.'"  *Id.* at 9 (quoting *Prescott*, 729 F. Supp. 2d at 364) (internal quotation marks omitted).

According to Plaintiffs, they satisfy this first stage.  *Id.*  They explain:

> The job duties of the named Plaintiffs, opt-in Plaintiff, and the putative class members were essentially the same as one another regardless of the call centers they worked at or whether they were attempting to sell products or encourage continuation of a product contract.  Plaintiffs' experience and observations over many years and at two of the three Maine call centers demonstrate that their job duties were essentially the same as those of all Argo customer service representatives and sales persons based in Maine, at least during the FLSA Class period.

---

[3]    A summary of the four affidavits and one supplemental affidavit submitted by Plaintiffs may be found in the "Discussion" section of this Order.  *See* Section III.C.2.a.i, *infra*.

*Id.* at 9-10.  Furthermore, Plaintiffs say that while the proposed class may not have worked the exact same hours, "most if not all" of the proposed class "regularly worked more than 40 hours per week when one counts as time worked the time it took to log into the VACD or Atmosphere software after logging into the Shift Planner software, bathroom breaks, and/or the two 15-minute rest periods." *Id.* at 10.  They also claim that the Defendants "paid its customer service representatives and sales persons in the same or similar ways." *Id.*

### B.   Defendants' Opposition

Defendants counter that Plaintiffs' request is "legally insufficient" because it is based on "a mere four (4) declarations accompanying their Motion." *Defs.' Opp'n* at 1.  In addition, they argue that Plaintiffs ignore the fact that "when an employer has lawful written policies and training aimed at prohibiting off-the-clock work, such as Argo's policies here, . . . it is well-settled that prospective FLSA representative plaintiffs must demonstrate their employer had a *common* practice *not* to follow them." *Id.* (emphasis in original) (internal citation omitted).  That is, they must demonstrate the violations are "tied to a single decision, policy or plan that binds the putative class and applies across *all* employer locations." *Id.* at 2 (citing *Hickson v. United States Postal Serv.*, No. 5:09-CV-83, 2010 WL 3835887, at *6 (E.D. Tex. July 22, 2010), *adopted*, 2010 WL 3835885 (E.D. Tex. Sept. 28, 2010); *Andersen v. Wells Fargo Fin., Inc.*, No. 4:11-cv-00085-JAJ-TJS, 2012 U.S. Dist. LEXIS 23175, at *19-20 (S.D. Iowa Feb. 6, 2012)) (emphasis in original).  Defendants claim that Plaintiffs have not proved such a single decision, policy or plan on the part of Argo, and cite Ms.

Douglas' declaration (paragraph 6) in support of their position.[4]  *Id.*  Furthermore, they argue that most of Plaintiffs' declarations relate to the Portland location, none of the Plaintiffs worked in Lewiston (the largest location and headquarters) and even if Argo staff "did not enforce its policies against 'off-the-clock' work and accurate time keeping in Portland, contrary to written policy and training (which they did not), occasional policy violations by individual managers at Argo's smallest location cannot establish 'a policy to violate a policy.'"  *Id.* at 2-3 (quoting *Thompson v. Speedway SuperAmerica LLC*, No. 08-CV-1107-PJS-RLE, 2009 WL 130069, at *2 (D. Minn. Jan. 20, 2009); *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012)).

In Defendants' view, it is of particular importance that "all Argo Declarants confirm that Argo has written and communicated policies (via manuals, training, and on-boarding processes) which . . . require all time to be recorded accurately to ensure employees are properly compensated and performing in accordance with efficiency and customer-driven goals."  *Id.* at 4.  This includes that they must "be paid for, all time worked, and expressly prohibit off-the-clock work or unapproved time."  *Id.*

Turning to the legal standard they say should apply here, Defendants argue that Plaintiffs have not demonstrated that members of the proposed class are "similarly situated," which they once again contend required a showing that they were victims of a single decision, policy or plan.  *Id.* at 5.  According to Defendants, "Plaintiffs have failed to show that Argo had a policy to violate its lawful written

---

[4]      A summary of Ms. Douglas' affidavit may be found in the "Discussion" section of this Order. *See* Section III.C.2.a.ii, *infra.*

policies against off-the-clock work and non-payment of wages and, for this reason alone, the request for conditional certification must be denied." *Id.* at 6.

Defendants then expand on why they take issue with Plaintiffs' declarations; namely, because "their experiences were unique and in no way representative of the experiences of Company employees in Lewiston or working from home." *Id.* at 6-7 (citing *Richardson*, 2012 WL 334038, at *3-6). In other words, Defendants argue that even if Plaintiffs demonstrated they worked off-the-clock in Portland, this would not "establish liability at other Argo locations." *Id.* at 7. Defendants also accuse Plaintiffs of "offering the Court a circumscribed view ask[ing] the Court to shoehorn all [FLSA] claims into a single notice despite differing facts, elements, and defenses, and the fact that combining them would result in extraordinary inefficiencies in the litigation." *Id.* at 8.

Finally, Defendants direct the Court's attention to recent Supreme Court caselaw—*Comcast Corp. v. Behrend*, 569 U.S. __, 133 S. Ct. 1426 (2013) and *RBS Citizens, N.A. v. Ross*, 133 S. Ct. 1722 (2013)—which they say "confirm that the Courts must undertake a rigorous analysis of class certification motions." *Defs.' Opp'n* at 8-9. According to Defendants, these cases stand for the proposition that the Court must "scrutinize" Plaintiffs' measurement of damages based on a class-wide theory, and consider whether individual damage calculations would ultimately "overwhelm questions common to the class." *Id.* at 9 (internal quotation marks and citation omitted). Defendants also argue that conditional class certification is improper because individualized assessments must be conducted as to Argo's

9

constructive or actual knowledge of any alleged off-the-clock violations by each Plaintiff. *Id.* (citing 29 C.F.R. § 785.11). In other words, Defendants believe that "each Plaintiff's claim will require individualized inquiries about their own time-tracking actions and whether they abided by the Company's policies related to login and time designation," making conditional certification ill-advised. *Id.* at 10.

### C.   **Plaintiffs' Reply**

Plaintiffs begin by clarifying that they are only seeking conditional certification on Count I of their First Amended Complaint relating to their FLSA claim for unpaid wages and overtime and, therefore, no "individualized assessment" needs to be made. *Pls.' Reply* at 1 n.1. They also accuse Defendants of applying the incorrect legal standard for conditional certification, arguing that Defendants request "this Court to resolve factual disputes and seek to convert the conditional certification decision into a full-blown trial on the merits." *Id.* at 1. In addition, citing *Trezvant v. Fidelity Employer Services Corp.*, 434 F. Supp. 2d 40, 42 (D. Mass. 2006), Plaintiffs contend that, at this stage, the Court need not make any findings of fact regarding conflicting evidence presented by each party or make any credibility determinations. *Pls.' Reply* at 2. Furthermore, Plaintiffs argue that the Supreme Court's decision in *Comcast* is inapposite to conditional certification cases because *Comcast* came under the more rigorous Rule 23 standard. *Id.*

Next, they contend they have "met their 'modest' burden to show that they and other Argo customer service representatives and salespersons in Maine were subjected to a common unlawful policy or plan." *Id.* This includes that (1) employees

were not paid for two rest breaks and this time was not counted for overtime purposes until December 2013; (2) employees were not compensated for bathroom breaks and this time was not counted for overtime purposes; and (3) employees were not compensated for "lag time" during the log-in process and this time was not counted for overtime purposes. *Id.* at 2-3. Plaintiffs also counter that, contrary to Defendants' position, "Argo does not have lawful written policies related to the off-the-clock work alleged here." *Id.* at 3. In other words, the provisions of Argo's policies and procedures manual does not address compensation "for rest breaks, bathroom breaks, and lag time between log-ins." *Id.*

Plaintiffs also argue that much of the substance in the Defendants' declarations do not dispute the assertions made by Plaintiffs and "to the extent there is a dispute about the length of the unpaid lag time between the two log-ins, resolution of that factual dispute is improper on conditional certification." *Id.* at 6 (citing *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1189 (D. Minn. 2007)). For example, Plaintiffs observe that Mr. Molloy's declaration establishes that he has reviewed Ms. LeVecque's log-in records so "there is no uncertainty or administrative difficulty in calculating the amount of unpaid lag time between the two log-ins," and cumulatively, this time is not de minimis. *Id.* at 7.

Finally, addressing the Defendants' contention that their request is improper because they have not presented any workers from the Lewiston location, Plaintiffs assert that "case law is clear that FLSA plaintiffs need not submit supporting declarations from every discrete employment location in order to prevail on a motion

11

[f]or conditional certification." *Id.* at 8 (citing *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227 (D. Me. 2011); *Burch*, 500 F. Supp. 2d at 1189). Here, Plaintiffs say, they have presented declarations from two out of three Argo locations in Maine, including "unrefuted evidence" that all three locations "operated in essentially the same manner and were subject to centralized timekeeping policies." *Id.* at 8-9. Plaintiffs also observe that, based on Defendants' own data, "as of December 2013, the Pittsfield and Portland locations together constituted well over 50% . . . of Argo's workforce." *Id.* at 9.

## III.   DISCUSSION

### A.   The Fair Labor Standards Act and Collective Actions

An employer may not employ its employees "for a workweek longer than forty hours unless" they receive overtime "at a rate not less than one and one-half times the regular rate at which" they are employed.[5] 29 U.S.C. § 207(a)(1). "An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* § 216(b). However, "'the action does not become a 'collective' action unless other plaintiffs affirmatively opt into the class by giving written and filed consent.'" *Prescott*, 729 F. Supp. 2d at 362 (quoting *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1249 (11th Cir. 2003)). An additional requirement is that the trial court must certify "that such opt-in plaintiffs are in fact 'similarly situated' and that

---

[5]      The FLSA also provides that employees classified as a "bona fide executive, administrative, or professional capacity" are exempt from receiving overtime. 29 U.S.C. § 213(a)(1). No issue has been raised in this case regarding exemptions under the statute.

the collective action is procedurally manageable and fair." *Id.*  Furthermore, although not noted explicitly under the FLSA, the Supreme Court has stated that "district courts have discretion . . . to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

In *Prescott*, Judge Hornby explained some differences between class certification under the FLSA and class certification under Rule 23.  729 F. Supp. 2d at 359-60.  Notably, he explained that "potential plaintiffs in an FLSA collective action must 'opt in' to be included, while persons fitting the definition of a Rule 23 class must 'opt out' to be excluded." *Id.* at 359.  In addition, "[t]he FLSA . . . does not incorporate Rule 23's numerosity, commonality, typicality, and adequacy criteria for class certification.  It requires only that collective action plaintiffs be 'similarly situated.'" *Id.* (quoting 29 U.S.C. § 216(b)).  In short, "the FLSA allows plaintiffs to proceed collectively based on a lesser showing than that required by Rule 23." *Id.*

## B.   Plaintiffs' Burden for Conditional Class Certification

Certification "'typically proceed[s] in two stages.'" *Id.* at 364 (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n.2 (5th Cir. 2008)); *see also Johnson*, 802 F. Supp. 2d at 233 ("The general practice of district courts within the First Circuit—including this Court—has been to adopt a 'two-tiered' approach to certification of collective actions under the FLSA") (collecting cases).  During the first stage, a court must decide "whether notice should be given to potential collective action members and usually occurs early in a case, before substantial discovery,

'based only on the pleadings and any affidavits which have been submitted.'" *Prescott*, 729 F. Supp. 2d at 364 (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)). Plaintiffs have the burden of demonstrating a "reasonable basis" for their claim that other similarly situated employees exist. *Id.* (internal quotation marks omitted). Said another way, Plaintiffs must present "'a modest factual showing' that [they] and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan." *Id.* (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). This may be accomplished "via a minimal factual showing that (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Johnson*, 802 F. Supp. 2d at 234 (internal quotation marks omitted).

This standard for the first stage is "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." *Prescott*, 729 F. Supp. 2d at 364 (internal punctuation omitted). Thus, "the initial stage analysis 'typically results in 'conditional certification'" of a collective action." *Id.* (quoting *Hipp*, 252 F.3d at 1218). In short, the Court "employs the same 'fairly lenient' standard as adopted by Judge Hornby." *Johnson*, 802 F. Supp. 2d at 234. At the same time, "plaintiffs must present more than mere allegations; i.e., some evidence to support the allegations is required." *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 892 (N.D. Iowa 2008) (internal

14

quotation marks omitted).  "'Courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted.'" *Lopez v. Tyson Foods, Inc.*, No. 8:06CV459, 2008 U.S. Dist. LEXIS 78685, at *16 (D. Neb. May 1, 2008) (quoting *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)).

If conditional class certification is granted, once discovery is completed, "an employer may move to decertify the collective action.  This is the 'second' stage, and the court must then 'make a factual determination as to whether there are similarly-situated employees who have opted in.'" *Prescott*, 729 F. Supp. 2d at 364 (quoting *Sandoz*, 553 F.3d at 916 n.2).  Factors to consider at this stage include "'factual and employment settings of the individual[] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *Id.* at 364-65 (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009)).  Once the district court conducts this analysis and if it determines "that employees are not 'similarly situated,' it will decertify the class and dismiss the opt-in plaintiffs without prejudice." *Id.* at 365.

## C.    Analysis

As Plaintiffs seek conditional class certification under the FLSA, "[t]his motion falls within the first stage.  Thus, the Plaintiffs have the burden of showing a

reasonable basis for [their] claim that there are other similarly situated employees." *Johnson*, 802 F. Supp. 2d at 234 (internal quotation marks omitted).

### 1.   The Effect of *Comcast Corp. v. Behrend* and *RBS Citizens, N.A. v. Ross* on Plaintiffs' Motion

Preliminarily, the Court addresses several contentions raised by the Defendants.  The Defendants contend that the United States Supreme Court rulings in *Comcast* and *RBS Citizens* "confirm that the Courts must undertake a rigorous analysis of class certification motions."  *Defs.' Opp'n* at 8-9.  According to them, this includes scrutinizing whether individual damage calculations would ultimately "overwhelm questions common to the class."  *Id.* at 9 (internal quotation marks omitted).  In *Comcast*, the Supreme Court "consider[ed] whether certification was appropriate under Federal Rule of Civil Procedure 23(b)(3)."  133 S. Ct. at 1430.  The *Comcast* Court did not discuss class certification in the context of the FLSA.  Similarly, in *RBS Citizens*, the Supreme Court issued a memorandum decision, remanding the case to the Seventh Circuit "for further consideration in light of *Comcast*."[6]  133 S. Ct. at 1722.

Neither *Comcast* nor *RBS Citizens* controls how the Court should rule on Plaintiffs' motion.  This is because "the FLSA allows plaintiffs to proceed collectively based on a lesser showing than that required by Rule 23."  *Prescott*, 729 F. Supp. 2d at 359.  In addition, Plaintiffs are only seeking conditional class certification at this

---

[6]     As the Seventh Circuit opinion in *RBS Citizens* reveals, that case was also in part an FLSA claim.  *Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2012).  However, the Seventh Circuit analyzed class certification under Rule 23(c)(1)(B) of the Federal Rules of Civil Procedure and did not mention the lesser standard for FLSA collective actions.  *See id.* at 902.

point to facilitate notice to other potential "similarly situated" employees. The Defendants will have an opportunity at the close of discovery to move for decertification of the class if they choose. *Id.* at 364. Furthermore, individual damage calculations and their impact on class certification are irrelevant during this "first stage" of conditional certification.

### 2. A Modest Factual Showing that Plaintiffs and Others Like Them with Similar Jobs Suffered from a Common Unlawful Policy or Plan

The Court turns to the heart of the issue: whether Plaintiffs have met their burden in proving that there are other similarly situated employees; namely, whether they have made "a modest factual showing that [they] and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan." *Id.* The Court concludes that Plaintiffs have met their burden at this stage as regard customer service representatives at all three Maine locations, as well as those who worked from home. The Court also concludes that Plaintiffs have met their burden as to sales people at all Maine locations.

### a. "Similarly Situated" Employees

As Judge Hornby pointed out in *Prescott*, "[t]he FLSA does not define 'similarly situated' or prescribe a method for certifying a collective action." *Id.* at 363. In fact, neither the Supreme Court nor the First Circuit has addressed the issue, "and the other Circuits have not drawn bright lines for determining whether employees are 'similarly situated.'" *Id.* (collecting caselaw from several circuits). Nevertheless, generally speaking, "courts have found that 'similarly situated' employees have

similar (not identical) job duties and pay provisions, and are victims of a common policy or plan that violated the law." *Id.* at 364 (internal citations and quotation marks omitted); *see also O'Brien*, 575 F.3d at 584 ("Showing a 'unified policy' of violations is not required"); *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (explaining that employees who are similarly situated are those who are "victims of a single decision, policy, or plan"). The Court turns to the evidence.

### i.       Plaintiffs' Affidavits

Hannah LeVecque was employed by the Defendants from June 2013 to January 2014 as a customer service representative. *Pls.' Mot.* Attach. 4 *Decl. of Hannah LeVecque in Support of Pls.' Mot. for Conditional Certification of Class* ¶ 3 (*LeVecque Decl.*). Although Argo has three call centers in the state of Maine—Portland, Lewiston, and Pittsfield—she only worked in Portland. *Id.* ¶ 4. Nevertheless, to her knowledge, "[t]he three call centers operated in essentially the same manner." *Id.* ¶ 5. Customer service representatives like Ms. LeVecque typically worked from 9 a.m. to 6 p.m. or 2:30 p.m. to 11 p.m., which included a half-hour unpaid meal break. *Id.*

She says that at the beginning of the work shift, customer service representatives had to "log into software entitled 'Shift Planner.'" *Id.* Subsequently, they logged into another piece of software known as "VACD," which is now known as "Atmosphere." *Id.* According to Ms. LeVecque, on average, it took her 20 to 30 minutes from the time she began logging into Shift Planner until she was done logging into VACD or Atmosphere. *Id.* ¶ 6. "During this lag time," the Defendants

required her to "review information regarding product updates and return procedures and to review and respon[d] to internal work-related messages." *Id.* Ms. LeVecque was not paid for this "lag time." *Id.*

When Ms. LeVecque went to the bathroom, the Defendants required her to "sign off of the VACD and Atmosphere software and to log back on once [she] returned." *Id.* ¶ 7. Ms. LeVecque asserts that she was not paid for any time in the bathroom, nor did the Defendants count that time toward overtime. *Id.* She was also required to take two 15-minute breaks during any given work shift up until approximately December 2013. *Id.* ¶ 8. Ms. LeVecque was not paid for any time on break, nor did the Defendants count that time for overtime. *Id.* According to Ms. LeVecque, all customer service representatives "were subject to common terms and conditions of employment." *Id.* ¶ 12. She also noted that in approximately August 2013, the Defendants trained customer service representatives to serve the additional role of sales personnel. *Id.* ¶ 13.

Nicholas Passafiume, another former Argo customer service representative, was employed by the Defendants from August 2013 to January 2014. *Pls.' Mot.* Attach. 5 *Decl. of Nicholas Passafiume in Support of Pls.' Mot. for Conditional Certification of Class* ¶ 3 (*Passafiume Decl.*). Mr. Passafiume was also employed by the Defendants from May 2013 to September 2013 as a sales person. *Id.* ¶ 4. He returned to his position as a customer service representative in approximately September 2013 due to "insufficient sales leads." *Id.*

19

Mr. Passafiume, like Ms. LeVecque, only worked in the Portland call center, but asserted that all "three call centers operated in essentially the same manner," and reiterated Ms. LeVecque's statements about shift times, and the time it took to log in to Shift Planner and VACD or Atmosphere, noting that he too was not paid for this "lag time" in which he was required to "review information regarding product updates and return procedures and to review and respon[d] to internal work-related messages." *Id.* ¶¶ 5-7.  He also had to log into these software programs as a sales person. *Id.* ¶ 8. Sales people like Mr. Passafiume typically worked from 9 a.m. to 6 p.m. or 12 p.m. to 9 p.m., which included a half-hour unpaid meal break. *Id.* Unlike customer service representatives, however, the "Defendants paid sales personnel from when they logged in on Shift Planner." *Id.*

Like Ms. LeVecque, when Mr. Passafiume went to the bathroom, the Defendants required him to "sign off of the VACD and Atmosphere software and to log back on once [he] returned." *Id.* ¶ 9. Mr. Passafiume was not paid for any time in the bathroom, nor did the Defendants count that time toward overtime. *Id.* This was the case during his time both as a customer service representative and sales person. *Id.* Also like Ms. LeVecque, he was required to take two 15-minute breaks during any given work shift up until approximately December 2013. *Id.* ¶ 10. Mr. Passafiume was not paid for any time on break, nor did the Defendants count that time toward overtime. *Id.* This was the case during his time both as a customer service representative and sales person. *Id.*

Mr. Passafiume, like Ms. LeVecque, says that all customer service representatives "were subject to common terms and conditions of employment." *Id.* ¶ 14. He stated that this was the case for sales personnel as well. *Id.* He also noted that "all customer service representatives were expected to adhere to 'Argo's 10 Commandments' included in the employee handbook," including "adherence to a common professional appearance policy and other terms and conditions common to all members of the potential class." *Id.* Finally, Mr. Passafiume explained that in approximately August or September 2013, the Defendants trained customer service representatives to serve the additional role of sales personnel. *Id.* ¶ 15.

Mr. Passafiume submitted a supplemental declaration in support of Plaintiffs' motion. *Pls.' Reply* Attach. 1 *Supplemental Decl. of Nicholas Passafiume in Support of Pls.' Mot. for Conditional Certification of Class* (*Passafiume Supplemental Decl.*). He added that "a small number of" customer service representatives worked from home, and to his knowledge, followed the same log-in procedures as those employees who worked in one of three locations, "and were subject to the same company-wide policies related [to] payroll and timekeeping." *Id.* ¶ 1. He says that the "lag time" he experienced during the log-in process was "well in excess of a minute" and was "rarely . . . less than 10 minutes." *Id.* ¶ 3. In addition, he states that, unlike the assertions of Defendants' declarants, he "was never trained by anyone at Argo to log in to Shift Planner and VACD/Atmosphere simultaneously," and further claims that a simultaneous log-in would be impossible "because agents needed to access Shift Planner first in order to gain access to the proper URLs required to connect to

21

VACD/Atmosphere and begin taking calls." *Id.* ¶ 4.  Finally, he explained that Argo introduced another software program in December 2013 called "Super CRM," which "lengthened the lag time between the first required log-in and the final log-in to VACD/Atmosphere." *Id.* ¶ 5.

Next, Plaintiffs offered the affidavit of opt-in Plaintiff Wayne C. Smith, who echoed much of Ms. LeVecque's assertions.  *Compare LeVecque Decl.* ¶¶ 1-13, *with Pls.' Mot.* Attach. 6 *Decl. of Wayne C. Smith in Support of Pls.' Mot. for Conditional Certification of Class* ¶¶ 1-12 (*Smith Decl.*).  Mr. Smith was employed by Argo from May 2013 to July 2014 as a customer service representative.  *Smith Decl.* ¶ 3.  He agreed that a typical shift for customer service representatives ranged from 9 a.m. to 6 p.m. or 2:30 p.m. to 11 p.m., but he typically worked from 9 a.m. to 5 p.m., Monday through Friday.  *Id.* ¶ 5.  Finally, Mr. Smith agreed with both Ms. LeVecque and Mr. Passafiume that Defendants began training some customer service representatives to serve as sales personnel in approximately August 2013, but he was not one of those customer service representatives who received such training.  *Id.* ¶ 12.

Finally, Plaintiffs offered the affidavit of Celeste Wing, who echoed much of Ms. LeVecque's assertions.  *Compare LeVecque Decl.* ¶¶ 1-13, *with Pls.' Mot.* Attach. 7 *Decl. of Celeste Wing in Support of Pls.' Mot. for Conditional Certification of Class* ¶¶ 1-11 (*Wing Decl.*).  Ms. Wing was employed by Argo from April 2013 to August 2013 as a customer service representative.  *Wing Decl.* ¶ 3.  Unlike Ms. LeVecque, who worked out of the Portland call center location, Ms. Wing worked in the Pittsfield location.  *Id.* ¶ 4.  At this location, there was an additional shift from approximately

10 p.m. to 6:30 a.m. that customer service representatives could work. *Id.* ¶ 5. Finally, unlike Ms. LeVecque, Ms. Wing did not state that she has personal knowledge that the Defendants began training customer service representatives to also serve as sales personnel in approximately August 2013. *See LeVecque Decl.* ¶ 13.

### ii.     Defendants' Affidavits

Daniel Molloy agrees with Plaintiffs that Argo has three call centers in Maine, but noted that the "Portland location is small and was acquired in May of 2013. Currently, less than seven percent (7%) of Argo employees work in Portland." *Defs.' Opp'n* Attach. 1 *Decl. of Daniel Molloy in Opp'n to Pls.' Mot. for Conditional Certification of Class* ¶ 8 (*Molloy Decl.*).   The majority of employees works at the Lewiston location, which he described as the "nerve center of Argo." *Id.* ¶¶ 8, 21.   He also explained that besides "Management and the Company's policies to ensure compliance, there was no integration between our primary Lewiston Center and the Portland satellite facility." *Id.* ¶ 20.

Regarding the software programs discussed by Plaintiffs in their affidavits, Mr. Molloy explained that "each individual employee [is given] the discretion to characterize and track their work time." *Id.* ¶ 15.   He also says that employees are "trained regularly as to how to designate their time on the platform during their workday." *Id.*   In addition, he explained that Shift Planner "is a software tool that is used at Argo to track attendance but not to pay our agents," and is a "knowledge base" and "reference tool" to support client care. *Id.* ¶ 16.   Contrary to Plaintiffs' assertions,

Mr. Molloy denied any knowledge that employees "must log into Shift Planner, and, then, perform work prior to logging onto the ACD platform which tracks work time for payroll purposes. This would be contrary to Company policy." *Id.* Thus, "if an employee does not log-in to ACD, contrary to the policy and training, their payroll would be impacted and subsequently fixed." *Id.* Specifically regarding Ms. LeVecque, Mr. Molloy says "that she logged into ACD and Shift Planner within minutes of each other" based on her login data, sometimes "within a minute or two." *Id.* ¶ 17.

He acknowledged that the work shifts listed by Plaintiffs were "typical of a Portland facility employee." *Id.* ¶ 21. Finally, regarding Plaintiffs' assertions that customer service representatives were being trained to fill the additional role of sales personnel, Mr. Molloy denies these assertions to the extent Plaintiffs claim the positions were "combined," but acknowledged that Argo "has, on occasion, found Customer Service Agents who are also skilled in Sales and has asked them to handle both types of calls. This is very rare. To suggest otherwise is to misrepresent the facts." *Id.* ¶ 26. He also attached true and confirming copies of Argo's policies and training manuals as exhibits to his declaration. *Id.* ¶ 32.

Jason Levesque is the owner, President, and Chief Executive Officer of Argo. *Defs.' Opp'n* Attach. 2 *Decl. of Jason Levesque in Opp'n to Pls.' Mot. for Conditional Certification of Class* ¶ 1 (*Levesque Decl.*). He confirmed that the Lewiston location is the headquarters of Argo, and the Portland and Pittsfield locations are "branch offices." *Id.* ¶ 5. Mr. Levesque confirmed that the "majority of the named Plaintiffs" worked "in the smaller Portland facility," and none worked at the Lewiston location

"with the vast majority of [the] company's employees." *Id.* ¶ 7. According to Mr. Levesque, 62% of Argo's approximate 400 Maine employees work in Lewiston, whereas the Portland branch is comprised of 7% of Maine workers. *Id.* ¶¶ 5, 9, 20.

Mr. Levesque explained that all employees receive a copy of the Argo company manual, which provides, among other things, that "[e]mployees are not authorized to work overtime without first obtaining the expressed approval of the company." *Id.* ¶¶ 14-17. Mr. Levesque also explained that all employees received training on the software programs, and Argo's "detailed policies apply to all employees across all locations." *Id.* ¶¶ 18-20.

Shannon Douglas is not a plaintiff in this matter, but she is an Argo customer service representative who works at the Lewiston location. *Defs.' Opp'n* Attach. 3 *Decl. of Shannon Douglas in Support of Defs.' Objection to Pl[s.'] Mot. for Conditional Certification of Class* ¶¶ 1, 3-4 (*Douglas Decl.*). She has worked for Argo in this capacity during two different time periods: July 22, 2011 to November 2012, and February 20, 2013 to the present. *Id.* ¶ 3.

She explained that if she works more than six hours during a shift, Argo requires her to take a 30-minute unpaid break and a 15-minute paid break. *Id.* ¶ 5. In addition, she says she has "always been paid for the time [she] worked" at Argo, and that in her experience, Argo's management is concerned with employees being paid for their work time. *Id.* ¶ 6.

Ms. Douglas goes on to note that Argo continuously trains its employees on proper use of its software programs, and that she has "always known though that

[Shift Planner] was not used as a payroll tool – but rather a tool to let the scheduling system know [she] was here." *Id.* ¶ 7. She also disputed Plaintiffs' assertions regarding the length of time it takes to log into Shift Planner and VACD or Atmosphere:

> The logging in process literally takes no longer than a minute. There is no lag time between the logging in to Shift Planner and the logging in to VACD or Atmosphere program and I was trained to do this simultaneously from the beginning of my employment. In fact, its [sic] been explained to me that it does not matter which system is logged into first.

*Id.* ¶ 9. Ms. Douglas asserts that "[i]t literally takes 30 seconds or less" to log in to these programs, and if someone said it "took more than five minutes or resulted in [her] not having all [her] work time recorded, they would be misrepresenting the facts." *Id.* ¶ 10. She also says that an additional step was added to the log-in process in January 2014, but that this only "added 1 or 2 seconds to the process as it is one additional mouse click," and further claims that "[a]ny lag time between the logging in process between Shift Planner and VACD or Atmosphere would be the result of employee error." *Id.* ¶¶ 11-12.

Finally, regarding bathroom breaks, Ms. Douglas says that she "was never forced to sign off the VACD or Atmosphere program" before going to the bathroom, and all work activities, including bathroom breaks, have "a code on the phone system that tracks that." *Id.* ¶ 13. She "was trained and required to self-direct [her] time tracking" and "designating [her] time as either a break, training, lunch, on a call, away or some other designation in the program commensurate with [her] actions." *Id.* ¶ 14.

Elizabeth Foshee is not a plaintiff in this matter, but, like Ms. Douglas, she was an Argo customer service representative at the Lewiston location. *Defs.' Opp'n* Attach. 4 *Decl. of Elizabeth Foshee in Support of Defs.' Objection to Pl[s.'] Mot. for Conditional Certification of Class* ¶¶ 1, 3-4 (*Foshee Decl.*). She was a customer service representative from August 2, 2010 to January 2012, and from August 19, 2013 to December 2013. *Id.* ¶ 3. In December 2013, she became a Team Leader, tasked with "assisting customer service representatives," and she currently serves in that position. *Id.*

Ms. Foshee says that Argo operates 24 hours per day, seven days per week, and customer service representatives' work "schedules are flexible depending on the employee needs and Argo's needs. There is no typical schedule but employees are required to be present for their approved scheduled shift." *Id.* ¶ 5. If she works more than six hours during a shift, she must take a 30-minute unpaid break and a 15-minute paid break. *Id.* ¶ 6. Furthermore, Ms. Foshee explained that Argo has always compensated her for her work time, including overtime when applicable. *Id.* ¶ 7.

Regarding Argo's software programs, Ms. Foshee says she was trained by one Jim Cunningham, who "specifically spent time in training with [her] going over the login process, which took just a few moments to do." *Id.* ¶ 8. She agreed with Ms. Douglas that keeping track of one's time was a "self-directed process," and it was her responsibility "to select the correct disposition of [her] time." *Id.* ¶¶ 9-10. In addition, she states that "[t]he logging in process typically takes no longer than a minute. There is no lag time between the logging in to Shift Planner and the logging in to

27

VACD or Atmosphere program and [she] was trained to do this simultaneously from the beginning of [her] employment." *Id.* ¶ 12. Ms. Foshee agrees with Ms. Douglas that it would be a misrepresentation of the facts for an Argo employee to claim that it "took more than five minutes" to log-in to the programs or resulted in "not having all . . . work time recorded." *Id.* ¶ 13. Moreover, she says that Argo's "training was very thorough and easy to comprehend and [she] was able to ask questions of" the human resources department. *Id.* ¶ 15. She concludes by noting that Argo has never asked her to work without being paid. *Id.* ¶ 17.

### iii.      Argo's Policies and Procedures Manual

Argo's manual contains one page devoted to compensation, and addresses five subcategories: (1) Bonuses, Commissions, and Raises; (2) Payroll; (3) Meals/Breaks; (4) Overtime; and (5) Jury Duty. *Molloy Decl. Ex.* B at 8. Regarding subcategory number one, the manual states that "[a]ll bonuses, commissions, and raises will be determined on a case-by-case basis by the CEO." *Id.*

As regards payroll, subcategory number two, employees are paid on a bi-weekly basis, and the pay cycle is from Monday to Sunday. *Id.* The manual also instructs that if an employee believes there is an error in his or her paycheck, that employee should "notify [the] supervisor as soon as possible and allow up to two business days for the company to review and resolve the matter." *Id.* This section of the manual was revised on December 11, 2013. *Id.*

Regarding meals/breaks, subcategory number three, employees who work six hours or more receive "an unpaid rest break of (30) thirty consecutive minutes per

work shift," which is not considered "time worked and is unpaid." *Id.* Those employees also receive "a (15) fifteen minute paid break." *Id.* Hourly employees are instructed to "record all punches on their official pay record." *Id.* This section of the manual was revised on December 3, 2013. *Id.*

As regards overtime, subcategory number four, hourly employees receive overtime in the amount of time and a half pursuant to federal and state laws. *Id.* "Employees are not authorized to work overtime without first obtaining the expressed approval of the company." *Id.* This section of the manual was revised on December 3, 2013.[7] *Id.*

Argo's manual contains one page addressing "payroll dispute policy." *Id.* at 14. Employees who dispute their pay are instructed to talk first with their immediate supervisor; if talks are unsuccessful, they are to discuss the issue with the division manager; if that discussion is also unsuccessful, they are to talk with the department manager; once again, if the issue remains unresolved, they are to talk with the Director of Human Resources, and finally, if that does not resolve the issue, they may speak with the Chief Executive Officer. *Id.* This section of the manual was revised on December 3, 2013. *Id.*

The Argo manual also contains two pages referred to as the "Argo 10 Commandments." *Id.* at 15-16. Notably, Commandment Number 8 provides that "[a]ll breaks (including bathroom) are to be taken per manager approval only." *Id.* at 16.

---

[7]     Subcategory number 5, regarding the protocol for an employee called for jury duty, is irrelevant to this Order and the Court omits its summary.

### iv.     Analysis

The Court concludes that the Plaintiffs have carried their burden at this fairly lenient stage.  Ms. LeVecque, Mr. Passafiume, and Mr. Smith, workers at the Portland location, stated that (1) they were not paid for two rest breaks and this time was not counted for overtime purposes until December 2013; (2) they were not compensated for bathroom breaks and this time was not counted for overtime purposes; and (3) they were not compensated for "lag time" during the log-in process and this time was not counted for overtime purposes.  Ms. Wing asserted the same as regards the Pittsfield location.

The Defendants take issue with the number of affidavits submitted by Plaintiffs in support of their motion, arguing that it is "legally insufficient."  *Defs.' Opp'n* at 1.  It is true that Plaintiffs submitted a total of four affidavits and one supplemental affidavit in support of their motion; however, the Defendants have not adequately explained why this quantity is "legally insufficient" to grant conditional certification.  Furthermore, although this Court stated in *Johnson* that the existence of only two named plaintiffs was insufficient to facilitate notice, 802 F. Supp. 2d at 238, here, there are five named plaintiffs (three of whom submitted affidavits), and six others wish to opt-in.  Of the six who wish to opt-in, only Wayne C. Smith has identified that he worked as a customer service representative in Portland.  This evidence is sufficient to demonstrate "a showing of other individuals interested in joining suit."  *Id.*

30

Defendants also argue that the contents of their affidavits controvert the Plaintiffs' affidavits, including Plaintiffs' contentions that they are "similarly situated" or that "a single decision, policy or plan" existed on the part of Argo. Therefore, they argue, Plaintiffs' motion must fail.  To the extent the Defendants' affidavits controvert the Plaintiffs' affidavits, the Court may not act as a factfinder in resolving a motion for conditional certification.

Once discovery is completed and if the Defendants move to decertify the class, the Court must "make a factual determination as to whether there are similarly-situated employees who have opted in." *Prescott*, 729 F. Supp. 2d at 364 (internal quotation marks omitted).  However, during this first stage, where the Court is only considering conditional class certification, "courts do not need 'to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented.'" *Trezvant*, 434 F. Supp. 2d at 43 (quoting *Kalish v. High Tech Inst.*, No. 04-1440, 2005 U.S. Dist. LEXIS 8238, at *7 (D. Minn. Apr. 22, 2005)); *see also Burch*, 500 F. Supp. 2d at 1189 ("The variation in off-the-clock time is more appropriately addressed after the completion of discovery and during the second stage of the certification determination") (internal quotation marks omitted).

In short, Plaintiffs have provided a sufficient factual showing at this stage that customer service representatives at the Portland and Pittsfield locations are similarly situated.

> **b.   The Lewiston Location and At-Home Customer Service Representatives**

31

Plaintiffs assert that notice should be facilitated to all Argo work locations in Maine—Portland, Lewiston, and Pittsfield.  "'[F]or a class to extend beyond the named plaintiffs' own work location, [the Plaintiffs] must demonstrate that employees outside of the work location for which the employee has provided evidence were similarly affected by the employer's policies.'" *Johnson*, 802 F. Supp. 2d at 235-36 (quoting *Travers v. JetBlue Airways Corp.*, No. 08-10730-GAO, 2010 WL 3835029, at *2 (D. Mass. Sept. 30, 2010)) (internal quotation marks omitted).  Although "'[t]he named plaintiffs need not demonstrate the existence of similarly situated persons at every location in the proposed class, [they] must demonstrate that there existed at least one similarly situated person at a facility other than [their] own.'"[8] *Id.* at 236 (quoting *Travers*, 2010 WL 3835029, at *2) (internal quotation marks omitted).

Ms. LeVecque, Mr. Passafiume, and Mr. Smith worked at the Portland location; Ms. Wing worked at the Pittsfield location.  They all attested to the same claimed violations of law based on the same alleged unlawful actions by the Defendants, and they all claimed that all customer service representatives, regardless of location, were subject to the same terms and conditions of employment.  Furthermore, all four of them stated that each location operated in a similar manner (i.e., including Lewiston).  *LeVecque Decl.* ¶ 5; *Passafiume Decl.* ¶ 6; *Smith Decl.* ¶ 5;

---

[8]     Although the Defendants argue that they had lawful written policies against employees performing off-the-clock work and, in their view, Plaintiffs must prove that Argo had a common practice not to follow them at all three Maine locations, *Defs.' Opp'n* at 1-2, the Court rejects their argument based on its previous ruling in *Johnson*.  *Johnson*, 802 F. Supp. 2d at 235-36.  Furthermore, as to the significance of Argo's written policies, although relevant as to whether a company-wide policy exists, "the mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence of a common policy of not paying for overtime." *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 935 (N.D. Ill. 2008).

32

*Wing Decl.* ¶ 5.   Furthermore, Mr. Passafiume stated that to the best of his knowledge, customer service representatives who worked from home "were subject to the same company-wide policies related [to] payroll and timekeeping." *Passafiume Supplemental Decl.* ¶ 1.

Given "the fairly lenient standard at the notice stage," the Court concludes that these facts support conditional certification as to customer service representatives at the Lewiston location and as to those who work at home. *See Johnson*, 802 F. Supp. 2d at 236 (concluding that conditional certification could extend to at all 19 of the defendant's locations beyond the primary work location of the two plaintiffs in Portland, Maine where one plaintiff had also previously worked in Memphis, Tennessee).   The situation here is different from the one in *Trevant*.   In that case, "[t]he Employees failed to show that Fidelity's policies . . . are company-wide . . . [where] the affidavits were all from employees that worked in the company's New Hampshire office [and n]one of the Employees submitting affidavits purported to know the policies of other branches of the company." 434 F. Supp. 2d at 51.   Here, the affidavits are from employees who worked in both the Portland and Pittsfield locations.   In addition, they "purported to know the policies of other branches of the company"; namely, that the Lewiston and at-home locations follow the same procedures as Portland and Pittsfield.   Although not an overwhelming basis of knowledge, this is enough to satisfy Plaintiffs' burden during the first stage.   *See Prescott*, 729 F. Supp. 2d at 369 (concluding that employees in both Maine and New Jersey could be part of the collective action where "one opt-in reported to a supervisor

in New Jersey, and one opt-in works in New Jersey," there was evidence that employees were subject to the same general practices, and their units had been set up by a manager who worked in Maine and New Jersey).

The Defendants argue that Plaintiffs' "experiences were unique and in no way representative of the experiences of Company employees in Lewiston or working from home" and therefore, cannot "establish liability at other Argo locations."[9] *Defs.' Opp'n*

---

[9]      In support, the Defendants cite *Richardson*, where the court denied conditional certification and explained that "Defendant Wells Fargo has clear written policies mandating accurate recordkeeping of employee's time and payment of overtime when worked outside scheduled shifts or during lunch time." 2012 U.S. Dist. LEXIS 12911, at *18-19. In addition, the *Richardson* Court observed that most of the plaintiffs "provide[d] no evidence that their supervisors actually told them that they must perform work off-the-clock, nor do most Plaintiffs provide proof of any rejected request for overtime pay for the tasks in issue." *Id.* at *19-20.

Richardson is distinguishable. First, although Argo's written policies establish that employees may not work overtime nor take breaks (including bathroom breaks) unless expressly approved by Argo, *see* Section III.C.2.a.iii, *supra*, this does not address Plaintiffs' assertions that they were not paid for this time. In addition, Plaintiffs claim that prior to December 2013, all breaks were unpaid. This claim has not been controverted by Argo, nor has either party submitted as an exhibit a copy of Argo's policies and procedures manual pre-December 2013. Second, if it was the policy of Argo not to pay their employees for breaks prior to December 2013, then Argo's knowledge of this policy may be inferred, and Argo employees need not have requested payment for this time. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) ("An employer . . . cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation") (internal quotation marks omitted); *Hertz v. Woodbury Cnty.*, 566 F.3d 775, 781 (8th Cir. 2009) ("[C]onstructive knowledge of overtime work is sufficient to establish liability under the FLSA"). Third, *Richardson* dealt with a request for conditional certification on a nationwide level. 2012 U.S. Dist. LEXIS 12911, at *16-31. The situation here involves call centers in three distinct locations in one state (not including customer service representatives who worked from home) where the Defendants employed 244 customer service employees and 100 sales employees as of December 31, 2014. *Molloy Decl. Ex.* A. The *Richardson* Court adequately explained:

> Plaintiffs rely heavily on several decisions by courts that granted conditional classes or declined to decertify a class. These cases, however, are materially distinguishable from the facts at bar. Several of the cited cases involved proposed classes vastly smaller in size or geographic scope, involved "call centers" that are somewhat unique factually, or had significant evidence of unified policies applied at one single facility or several facilities where many plaintiffs worked—all dissimilar to the evidence at bar. *See, e.g., Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 906 (S.D. Tex. 2009) (one facility in Texas); *Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819, 822 (E.D. Mich. 2009) (six call centers in Michigan); *Bishop v. AT&T Corp.*, 256 F.R.D. 503, 505 (W.D. Pa. 2009) (call centers in various cities in six states, with proof that the employees were only paid for the time they actually were logged into the telephone call system despite the need to log into other computer software systems to do their jobs).

34

at 6-7.  The Court recognizes that affidavits submitted by the Defendants—especially from Ms. Foshee and Ms. Douglas, both of whom worked as customer service representatives at the Lewiston location—suggest that the experiences of Argo's customer service representatives were not identical in every location.  For example, Ms. Foshee and Ms. Douglas denied that any "lag time" exists during the log-in process.  *Douglas Decl.* ¶ 9; *Foshee Decl.* ¶ 12.  The Plaintiffs have not submitted any affidavits from customer service representatives who worked in Lewiston, which is indisputably the largest Argo location as of December 2014.  *See Molloy Decl. Ex.* A.  Through discovery, it may come to bear that there were significant variations in how each location dealt with so-called "lag time," bathroom breaks, and work breaks.  Nevertheless, "these differences are best considered at the second stage after discovery has provided 'a more extensive and detailed factual record.'"  *Johnson*, 802 F. Supp. 2d at 236 (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)).

### c.    Sales Employees

The next question is whether to include sales persons in the collective action on a conditional basis.  Of the submitted affidavits, only Mr. Passafiume worked as a sales employee and only for a brief period; Mr. Passafiume was employed by the Defendants from May 2013 to September 2013 as a sales person.  *Passafiume Decl.* ¶

---

*Id.* at *29-30.  Other cases cited by the Defendants are also similarly distinguishable.  *See, e.g.*, *Hickson*, 2010 U.S. Dist. LEXIS 104112, at *20, 51 (recommending denial of conditional certification where plaintiffs sought to include approximately 20,000 United States Postal Service employees "scattered throughout five states").

4.  He returned to his position as a customer service representative in approximately September 2013 due to "insufficient sales leads."  *Id.*  However, unlike customer service representatives, the "Defendants paid sales personnel from when they logged in on Shift Planner."  *Id.* ¶ 8.  Mr. Passafiume also stated that he was not paid for breaks or bathroom breaks during his time as both a customer service representative and sales person.  *Id.* ¶¶ 9-10.  He also explained that customer service representatives and sales personnel were subject to the same terms and conditions of employment.  *Id.* ¶ 14.  There is also evidence from Ms. LeVecque, Mr. Passafiume, and Mr. Smith that Argo began training at least some customer service representatives to serve the dual role of sales personnel in approximately August or September 2013.  *LeVecque Decl.* ¶ 13; *Passafiume Decl.* ¶ 15; *Smith Decl.* ¶ 12.

Given these facts, the Court concludes that Plaintiffs have met their burden of a "modest factual showing" that sales personnel at all Maine locations can be part of the collective action.  Even Mr. Molloy stated that Argo "has, on occasion, found Customer Service Agents who are also skilled in Sales and has asked them to handle both types of calls."  *Molloy Decl.* ¶ 26.  Furthermore, it is also relevant that the job duties of both positions are fairly similar.  *Compare LeVecque Decl.* ¶ 3 (explaining that in her capacity as a customer service representative she "answered incoming phone calls from customers and attempted to convince them to renew or not to cancel their agreement to purchase product(s) sold by Argo on behalf of third party vendors"), *with Passafiume Decl.* ¶ 4 (explaining that in his capacity as a sales employee he "tried to encourage customers to purchase, *inter alia*, weight loss and

36

sexual enhancement products from third party vendors who had contracts with Defendants to promote the sale of such products"). Although their job duties are not identical, Plaintiffs need only show that the proposed class members "have similar (not identical) job duties and pay provisions, and are victims of a common policy or plan that violated the law." *Prescott*, 729 F. Supp. 2d at 364 (internal citations and quotation marks omitted).

### d.   Summary

In sum, because Plaintiffs have satisfied the "first stage" for purposes of conditional certification of their FLSA claim in Count I of their First Amended Complaint, the Court concludes that both customer service representatives and sales personnel from all Argo locations in Maine may be included in the collective action.

### D.   Temporal Scope of the Collective Action

An action under the FLSA must be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An action is deemed "commenced on the date when the complaint is filed," but "in the case of a collective or class action," an action is deemed "commenced in the case of any individual claimant" either

> (a)   on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

> (b)   if such written consent was not so filed or if his name did not so appear – on the subsequent date on which such written consent is filed in the court in which the action was commenced.

*Id.* § 256.  Thus, under the FLSA, the statute of limitations period is not tolled upon the filing of a complaint for purposes of a class action, unlike class actions under Rule 23.  FED. R. CIV. P. 23; *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action"); *see also Basch v. Ground Round, Inc.*, 139 F.3d 6, 10-12 (1st Cir. 1998) (discussing the *American Pipe* tolling rule).

As noted, a "willful violation" extends the limitations period to three years, but "[w]illfulness is a question going to the merits of the case that [the Court] do[es] not decide at this time."  *Prescott*, 729 F. Supp. 2d at 370.  The Court will employ the three-year window as "justice is best served by notice reaching the largest number of potential plaintiffs."  *Id.*  As such, "[f]or a named plaintiff, the statute runs from the filing of the complaint, but the limitations period for an opt-in plaintiff runs from the date he or she files a consent to join the case."  *Id.*  Thus, court-approved notice will be sent to all current and former customer service representatives and sales personnel of Argo who have worked for the company within three years of the date of the collective action notice.

### E.    The Current Opt-In Plaintiffs

Six former or current Argo employees other than the named Plaintiffs filed consents with the Court to become plaintiffs in the case pursuant to 29 U.S.C. § 216(b).  As a result, the statute of limitations on their claims have been tolled, and because the Court concludes that conditional certification is proper, the six opt-ins

38

become plaintiffs.  *See id.*  Furthermore, Plaintiffs are "not required to seek formal amendment pursuant to Rule 15 to add the opt-in plaintiffs."  *See id.* (collecting cases).  In the event "the collective action is later decertified, they will be dismissed without prejudice, and may pursue their claims individually or seek to rejoin this suit under Rule 20."  *Id.* (internal citations omitted).

## IV.   PLAINTIFFS' REQUESTS FOR APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL AND APPROVAL OF PROPOSED NOTICE AND CONSENT FORM

### A.   Appointment of Class Representatives and Class Counsel

Plaintiffs request that the Court appoint the five named Plaintiffs as class representatives and Johnson, Webbert & Young, LLP as lead class counsel.  The Court denies Plaintiffs' request.  Judge Torresen recently observed:

> [T]hese requests are properly addressed in the Rule 23 class certification context, where unnamed class members are bound by the outcome of the litigation.  Here, with an opt-in collective action, only individuals who affirmatively chose to join the litigation will be bound by its outcome.  The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context.  I decline to appoint class representatives or class counsel.

*O'Connor v. Oakhurst Dairy*, No. 2:14-cv-00192-NT, 2015 U.S. Dist. LEXIS 67029, at *10-11 (D. Me. May 22, 2015).  The Court adopts Judge Torresen's reasoning and denies Plaintiffs' request in this case.

### B.   Notice and Consent Form

The Defendants argue that there are "several defects and objectionable aspects relative to the 'proposed notice'" submitted by Plaintiffs for the Court's review and approval but chose not to address these alleged "defects and objectionable aspects" in

their opposition, deciding instead to see if the Court granted Plaintiffs' motion. *Defs.' Opp'n* at 10 n.19. Because the Court grants Plaintiffs' motion for conditional certification, they ask the Court to direct "the parties to confer . . . before the Court assesses the notice per the guidance under *Hoffman-La Roche Inc. v. Sperling*, 49[3] U.S. 165, 170-71." *Defs.' Opp'n* at 10 n.19. Plaintiffs did not address the Defendants' request in their reply.

In *Sperling*, the Supreme Court reasoned that "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." 493 U.S. at 170-71. As Plaintiffs have not objected to the Defendants' request, the Court concludes they have waived any arguments against it. The Court directs the parties to confer and report back to the Court within seven days of the date of this Order.

## V.   CONCLUSION

The Court GRANTS Plaintiffs' Motion for Conditional Certification of FLSA Collective Action and to Facilitate Court-Approved Notice (ECF No. 33). The parties are ORDERED to confer with each other regarding the proposed notice and consent form before the Court and report back to the Court within seven days of the date of this Order.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 12th day of June, 2015